IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| STEPHEN MCCOMB, an individual; and JOVAN AIRCRAFT SERVICES, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT MALONE, an individual; CPS SPECIALIZED, LLC, an Oregon limited liability company, and PETER EMERSON, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cv-00897-RJS<br><br>Judge Robert J. Shelby |

      This case involves disputes arising out of an aircraft-exchange agreement. Plaintiffs Stephen McComb and Jovan Aircraft Services, LLC entered into an agreement with Defendants Scott Malone and CPS Specialized, LLC to exchange aircraft. After executing the exchange, Plaintiffs learned that the aircraft they received from Malone and CPS Specialized had numerous defects, rendering the aircraft unsafe to fly. Plaintiffs then sued Malone and CPS Specialized for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, fraudulent nondisclosure, unjust enrichment, and promissory estoppel. Plaintiffs also sued Defendant Peter Emerson, the mechanic who certified the allegedly unsafe aircraft as airworthy, for negligence and aiding and abetting fraud.

      Emerson now moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the claims against him, arguing that the court does not have personal jurisdiction over him. For the reasons stated below, the court GRANTS Emerson's Motion.

1

# BACKGROUND[1]

Plaintiff Stephen McComb resides in Summit County, Utah, and Plaintiff Jovan Aircraft Services, LLC is a Delaware limited liability company with its principal place of business also in Summit County, Utah. McComb is a member of Jovan, which was the owner of a 1971 Mitsubishi MU-2F aircraft.

In August 2014, Defendants Scott Malone and CPS Specialized, LLC became interested in purchasing the Mitsubishi from Jovan. Malone offered to purchase the Mitsubishi from Jovan for $75,000 and a 1972 Cessna 340 aircraft that Malone and CPS Specialized owned at the time. Malone represented to McComb that the Cessna was airworthy and up to date on all of its inspections and maintenance.

Days later, Jovan and Malone entered into a written agreement to exchange aircraft according to the terms that Malone offered. The parties agreed to complete the exchange in Salt Lake City, Utah in September 2014. They also agreed to deliver their respective aircraft with valid Federal Aviation Administration Certificates of Airworthiness.

After signing the agreement, but before delivering the Cessna to Plaintiffs in Utah, Malone had Defendant Peter Emerson inspect the Cessna in Washington.[2] Emerson resides in Oregon and is an FAA certified mechanic.[3] Plaintiffs allege in their Amended Complaint that Malone and CPS Specialized told Emerson of their intent to exchange the Cessna for another aircraft in Utah, and that they needed a certificate of airworthiness. Plaintiffs also allege that

---

[1] Because this matter is before the court on a motion to dismiss for lack of personal jurisdiction, the court accepts as true the well-pled factual allegations in Plaintiffs' Amended Complaint "to the extent they are uncontroverted by the defendant's affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citation omitted) (internal quotation marks omitted).
[2] Decl. of Peter Emerson (Dkt. 5, Ex. 1), ¶ 11.
[3] *Id.* ¶ 2.

Malone and CPS Specialized persuaded Emerson not to perform a thorough evaluation of the Cessna's airworthiness.

Emerson disputes this, and testifies in his declaration in support of his Motion that another mechanic approached him to inspect the Cessna. Emerson states that he did not speak with Malone before his inspection, that he did not know either before or after his inspection that Malone and CPS Specialized were selling the Cessna, and that he has never spoken with Plaintiffs.[4] He further testifies that he has not contacted anyone in Utah related to his inspection of the Cessna.[5] Plaintiffs have not submitted a competing affidavit to contradict Emerson's testimony or to bolster their own allegations.

Emerson certified the Cessna as airworthy, and the parties exchanged aircraft in Utah one week later. McComb then flew the Cessna to Florida, where another mechanic inspected it about one year later. The mechanic discovered that the Cessna had major defects dating back to September 2010 that had never been corrected, even though Emerson later certified the aircraft as airworthy. The mechanic determined that the Cessna had not been airworthy since September 2010, that it was not airworthy in September 2014, and that it was potentially deadly to fly. In all, the mechanic found fifty-six defects and estimated that it would cost no less than $120,000 to make the Cessna airworthy.

After learning of the Cessna's defects, Plaintiffs sued Malone and CPS Specialized for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, fraudulent nondisclosure, unjust enrichment, and promissory estoppel. Plaintiffs also sued Emerson for negligence, as well as for aiding and abetting the alleged fraud perpetrated by Malone and CPS Specialized. In support of their latter claim, Plaintiffs allege that Emerson

---

[4] *Id.* ¶¶ 9, 12–13.
[5] *Id.* ¶ 14.

substantially assisted and encouraged Malone and CPS Specialized's fraudulent scheme to sell the Cessna to a Utah resident and to represent that the aircraft was airworthy even though it was not.

Emerson now moves under Federal Rule of Civil Procedure 12(b)(2) to dismiss the claims against him for lack of personal jurisdiction. Emerson swears in his declaration that he has never visited, resided in, or conducted business in Utah; that he has not kept an address, phone number, or fax number in Utah; that he does not own, lease, or control any property or assets in Utah; that he does not have any bank accounts in Utah; and that he does not advertise or solicit business in Utah.[6]

## LEGAL STANDARD

Where, as here, the court considers a defendant's motion to dismiss for lack of personal jurisdiction based on the documentary evidence and without holding an evidentiary hearing, a plaintiff need only make a prima facie showing that personal jurisdiction exists.[7] In analyzing whether a plaintiff has met its burden, the court must accept the allegations in the plaintiff's complaint as true "to the extent they are uncontroverted by the defendant's affidavits."[8]

To establish personal jurisdiction over a defendant, a plaintiff must show, "first, that jurisdiction is authorized under Utah law and, second, that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[9] Utah's long-arm statute permits the exercise of jurisdiction "over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment."[10] As a result, the traditional two-step

---

[6] *Id.* ¶¶ 3–8.
[7] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).
[8] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).
[9] *Rusakiewicz*, 556 F.3d at 1100.
[10] *Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944, 950–51 (Utah 2008) (quoting Utah Code § 78B-3-201(3)).

jurisdictional analysis effectively collapses into the second, constitutional inquiry.[11]

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[12] "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts [with the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[13]

A court may exercise either general or specific personal jurisdiction over a nonresident defendant under the minimum contacts test.[14] Plaintiffs here assert specific jurisdiction, "which exists only when the suit relates to the defendant's contacts with the forum state."[15]

In that context, the minimum contacts inquiry "focuses on the relationship among the defendant, the forum, and the litigation."[16] "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[17] And in tort cases such as this one, the plaintiff must show that "the nonresident defendant 'purposefully directed' its activities at the forum state," and that the plaintiff's injuries "'arise out of' [the] defendant's forum-related activities."[18]

The Supreme Court recently elaborated on these requirements in *Walden v. Fiore*. The Court first explained that "the relationship must arise out of contacts that the defendant *himself*

---

[11] *Rusakiewicz*, 556 F.3d at 1100.
[12] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).
[13] *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).
[14] *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).
[15] *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179 (10th Cir. 2014).
[16] *Walden*, 134 S. Ct. at 1121 (citation omitted) (internal quotation marks omitted).
[17] *Id.*
[18] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008); *see also Walden*, 134 S. Ct. at 1134 ("A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.").

creates with the forum State."[19]  This requirement exists to "protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties."[20]

The Court also stated that proper minimum contacts analysis focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[21]  Put differently, "the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."[22]

Finally, while "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," his "relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[23]  The Court then reiterated that it is "insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff."[24]

## ANALYSIS

Plaintiffs maintain that the court has personal jurisdiction over Emerson because he purposefully directed his conduct toward Plaintiffs in Utah by assisting Malone and CPS Specialized with their fraudulent scheme to sell a defective aircraft to Plaintiffs in Utah, and that Emerson's conduct caused financial injury to Plaintiffs in Utah.  Plaintiffs allege in their Amended Complaint that Emerson knew of and participated in the fraudulent scheme, a critical part of which was his misleading certification that the Cessna was airworthy.  Plaintiffs also

---

[19] *Walden*, 134 S. Ct. at 1122 (citation omitted) (internal quotation marks omitted).
[20] *Id.*
[21] *Id.*
[22] *Id.*; *see also id.* at 1125 ("The proper question is not whether the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").
[23] *Id.* at 1123.
[24] *Id.*  Even if the court finds that a defendant has sufficient minimum contacts with the forum State, the exercise of personal jurisdiction over the defendant must "be consonant with traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1071.  Because the court concludes that Emerson does not have sufficient minimum contacts with Utah, the court does not reach this issue.

contend that Emerson knew that Plaintiffs would rely on his false certification in Utah and that the transaction would not have taken place without his false statements.[25]

Emerson argues that the court does not have personal jurisdiction over him because he has formed no meaningful contacts with Utah. Emerson testifies in his declaration that he lives in Oregon; that he has never visited, resided in, or conducted business in Utah; and that he inspected the Cessna in Washington. He further testifies that another mechanic approached him to inspect the Cessna; that he did not speak to Malone before performing the inspection; and that he did not know either before or after the inspection that Malone and CPS Specialized intended to sell the Cessna. Emerson also testifies that he has never spoken to Plaintiffs or contacted anyone in Utah related to the inspection. Because Plaintiffs have not submitted an affidavit to contradict Emerson's testimony or to bolster their own allegations, the court accepts Emerson's

---

[25] Plaintiffs also contend that Emerson's Motion to Dismiss is moot for two reasons. First, Plaintiffs argue that Emerson's Motion is moot because it is drawn to Plaintiffs' original Complaint, instead of their Amended Complaint. The court disagrees. Plaintiffs filed their original Complaint in November 2015 in Utah state court. (Dkt. 2.) Malone and CPS Specialized then timely removed the case to this court in December 2015. (*Id.*) On January 11, 2016, Emerson filed his first Motion to Dismiss for lack of personal jurisdiction. (Dkt. 5.) Plaintiffs then filed their Amended Complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1) on January 20, 2016, replacing their original Complaint as the operative pleading. (Dkt. 7.) The court subsequently denied Emerson's first Motion to Dismiss without prejudice because the Motion was moot in view of Plaintiffs' Amended Complaint. (Dkt. 8.) Emerson then filed his second Motion to Dismiss for lack of personal jurisdiction on February 2, 2016. (Dkt. 12.) Emerson's second Motion is identical to his first Motion, except that he acknowledges in his second Motion that the court denied his first Motion without prejudice because Plaintiffs timely filed their Amended Complaint, which replaced their original Complaint as the operative pleading. The court concludes that Emerson's second Motion to Dismiss is drawn to Plaintiffs' Amended Complaint and therefore is not moot on this ground.

Second, Plaintiffs argue that Emerson's current Motion to Dismiss is moot because Plaintiffs' Amended Complaint establishes that the court has federal question jurisdiction over Emerson under 28 U.S.C. § 1331. Again, the court disagrees. Section 1331 confers district courts with subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The court is skeptical whether Plaintiffs have pled a claim against Emerson that arises under federal law. But even assuming Plaintiffs have pled a federal claim against Emerson, "personal jurisdiction and subject matter jurisdiction are two separate inquiries." *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1331 (D. Utah 2006). And a plaintiff cannot establish personal jurisdiction by proving the existence of subject matter jurisdiction. *Martinez v. Aero Caribbean*, 2012 WL 258658, at *3 (N.D. Cal. Jan. 27, 2012); *see also Outboard Marine Corp. v. Stumbras*, 1991 WL 22511, at *4 (N.D. Ill. Feb. 14, 1991) ("Subject matter jurisdiction and personal jurisdiction are different animals, and the existence (or absence) of one does not create the existence (or absence) of the other."). The court concludes that Emerson's second Motion to Dismiss is not moot.

testimony as true for the purposes of analyzing his Motion.[26]

The court agrees with Emerson that he has formed insufficient contacts with Utah for the court to exercise personal jurisdiction over him. Although neither party addressed it in the briefing, the Supreme Court's recent decision in *Walden v. Fiore*[27] is instructive. There, a police officer in Georgia seized a large amount of cash from two travelers at an Atlanta airport before the travelers boarded their flight to Las Vegas.[28] The officer later allegedly filed a false probable cause statement with the United States Attorney's Office in Georgia.[29] After returning home to Nevada, the travelers sued the officer in Nevada for violating their Fourth Amendment rights.[30]

The district court granted the officer's motion to dismiss for lack of jurisdiction.[31] The court ruled that the officer's seizure of cash in Georgia did not establish jurisdiction in Nevada, even if the officer caused harm to the travelers in Nevada while knowing they lived in Nevada.[32] The Ninth Circuit, however, held that the district court had personal jurisdiction over the officer because the officer "expressly aimed" his allegedly false affidavit at Nevada with knowledge that "it would affect persons with a 'significant connection' to Nevada."[33]

The Supreme Court reversed. The Court held that the officer lacked sufficient minimum contacts with Nevada to subject him to jurisdiction there.[34] Although the officer "allegedly directed his conduct at [travelers] whom he knew had Nevada connections," no part of his

---

[26] On the same day he filed his Reply to Plaintiffs' Opposition to his second Motion to Dismiss, Emerson filed a third Motion to Dismiss in the event the court ruled that his second Motion is moot. (Dkt. 20.) Plaintiffs then filed an Opposition to Emerson's third Motion to Dismiss, to which Plaintiffs attached McComb's declaration and other documentary evidence. (Dkt. 21.) The court, however, declines to consider McComb's declaration and the other documentary evidence because Plaintiffs failed to submit the declaration and other evidence with their Opposition to Emerson's second Motion to Dismiss.
[27] 134 S. Ct. 1115 (2014).
[28] *Id.* at 1119.
[29] *Id.*
[30] *Id.* at 1120.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.* at 1124.

conduct occurred in Nevada.[35]  The officer approached, questioned, and searched the travelers, and seized the cash in the Atlanta airport.[36]  And he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada."[37]  "In short, when viewed through the proper lens—whether the *defendant's* actions connect him to the *forum*—[the officer] formed no jurisdictionally relevant contacts with Nevada."[38]

The Court went on to state that the Ninth Circuit's approach "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."[39]  Indeed, "mere injury to a forum resident is not a sufficient connection to the forum."[40]  The Court then concluded that the officer's "relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected [the travelers] with connections to the forum State does not suffice to authorize jurisdiction."[41]

The same result is warranted here.  No part of Emerson's conduct occurred in Utah.  He inspected the Cessna in Washington.  And he never traveled to, conducted business in, or contacted anyone in Utah relating to his inspection.  Indeed, Emerson neither knew that Malone and CPS Specialized intended to sell the Cessna in Utah, nor knew that Plaintiffs had Utah connections.  In short, Emerson formed no jurisdictionally relevant contacts with Utah.

Plaintiffs' contention that jurisdiction exists because Emerson allegedly participated in a fraudulent scheme that caused harm in Utah suffers from a similar infirmity as the Ninth Circuit's approach in *Walden*.  Plaintiffs seek to allow their connection to Emerson, the other Defendants, and Utah to drive the jurisdictional analysis.  But the Supreme Court has

---

[35] *Id.* at 1124–25.
[36] *Id.* at 1124.
[37] *Id.*
[38] *Id.*
[39] *Id.* at 1125.
[40] *Id.*
[41] *Id.* at 1126.

"consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."[42] And to the extent Plaintiffs rely on their financial injury in Utah as a basis for establishing personal jurisdiction, "mere injury to a forum resident is not a sufficient connection to the forum" to create jurisdiction.[43]

Plaintiffs rely on *CGC Holding Co. v. Hutchens*[44] to support their position. In *Hutchens*, plaintiffs alleged that an out-of-state attorney made false and misleading representations to them about the legitimacy of an out-of-state lender who was operating a fraudulent loan scheme in the forum State.[45] Plaintiffs submitted corroborating affidavits showing that the attorney used emails and telephone conversations to state that he represented the lender's alter ego companies, and to vouch for the legitimacy of the lender and one of his alter ego companies.[46] Based on plaintiffs' allegations and affidavits, the court concluded that it had personal jurisdiction over the attorney because he "affirmatively" and "'aggressively' injected himself into the loan application process" by vouching for the lender, by vouching for his alter ego companies, and by promoting the loan application process.[47]

This case is distinguishable. To be sure, Plaintiffs allege in their Amended Complaint that Emerson knowingly participated in a fraudulent scheme to sell a defective aircraft in Utah to a Utah resident, and that the scheme caused financial injury to Plaintiffs in Utah. But unlike in *Hutchens*, Emerson controverts these allegations in his sworn declaration, in which he testifies that he was unaware both before and after he inspected the Cessna that Malone and CPS

---

[42] *Id.* at 1122; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (stating that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").
[43] *Walden*, 134 S. Ct. at 1125.
[44] 824 F. Supp. 2d 1193 (D. Colo. 2011).
[45] *Id.* 1197, 1204.
[46] *Id.* at 1204–06.
[47] *Id.* at 1206.

Specialized intended to sell the aircraft. Without knowing that Malone and CPS Specialized intended to sell the Cessna, Emerson could not have knowingly participated in a fraudulent scheme to sell it. It follows then that Emerson could not have "injected" himself into an allegedly fraudulent scheme directed at Utah.

Emerson's relevant conduct occurred entirely in Washington. And the mere fact that his conduct allegedly affected Plaintiffs with strong connections to Utah is insufficient to create jurisdiction. Plaintiffs have not met their burden to make a prima facie showing that the court has personal jurisdiction over Emerson.

## CONCLUSION

For the reasons stated, the court GRANTS Emerson's Motion to Dismiss Plaintiffs' claims against him for lack of personal jurisdiction (Dkt. 12). Emerson's third Motion to Dismiss (Dkt. 20) is DENIED as moot.

SO ORDERED this 1st day of June, 2016.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge